IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHARLES BERNARD ROBINSON, JR.,
    Plaintiff,

vs.                                    Case No.: 3:14cv223/LAC/EMT

WALTER L. GIELOW, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Charles Bernard Robinson, Jr. ("Robinson"), an inmate of the Florida Department of Corrections ("FDOC"), proceeds pro se and in forma pauperis in this action brought under 42 U.S.C. § 1983. Robinson sues three FDOC correctional officers, Lieutenant Walter Gielow, Sergeant K. Grant, and Officer Marshall Barfield, claiming they violated his Eighth Amendment rights by failing to provide him access to mental health treatment when he declared psychological emergencies, and by using excessive force on him (*see* ECF No. 34).[1] Presently before the court is Defendants' Motion to Dismiss for failure to exhaust available administrative remedies (ECF No. 55). Robinson responded in opposition to the motion (ECF Nos. 67, 73).

I.    BACKGROUND and INTRODUCTION

In the Third Amended Complaint (ECF No. 34), which is the operative pleading, Robinson alleges that he was housed at Santa Rosa Correctional Institution ("SRCI") at the time of the events giving rise to this action (July 12–13, 2011) (*see* ECF No. 34 at 8–10, 23–26).[2] He alleges at that time, he was an inmate with an "S-3 grade," meaning, he had a moderate impairment in adaptive

---

[1] Plaintiff also asserted a due process claim (*see* ECF No. 34); however, that claim, and his related request for injunctive relief, was previously dismissed by the court (*see* ECF No. 46).

[2] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those that Plaintiff may have assigned.

functioning due to an "Axis I disorder" or a personality disorder (*id.* at 25). He alleges his custody/housing classification at that time was Close Management I ("CMI").[3] Robinson alleges he declared a "mental health (psychological) emergency" to Sergeant Grant and Officer Barfield at approximately 11:00 p.m., 11:30 p.m., 12:00 a.m., 12:30 a.m., 1:00 a.m., and 1:35 a.m. on July 12–13, 2011 (*see id.* at 8, 12, 23–25). He alleges Grant and Barfield ignored his pleas for help and failed to notify the Chief in Command so that mental health staff could report to the dormitory and evaluate him (*id.*). Robinson alleges at approximately 1:35 a.m., Grant and Barfield opened the flap of his cell door and sprayed multiple cans of pepper spray into his cell (*id.* at 9–11). He alleges he was "never in a recalcitrant nature" to justify the use of pepper spray (*id.* at 9, 23). Robinson alleges Lieutenant Gielow witnessed and participated in the use of force (*id.* at 10, 23–24). He alleges he was allowed to shower, and then received a medical examination by a nurse at approximately 2:00 a.m. (*id.* at 9, 13–15, 24). Robinson alleges between the time he was sprayed and the time he showered, he suffered burning skin and difficulty breathing (*id.* at 24). He alleges he declared a mental health emergency to the nurse, but the nurse "declined" (*id.* at 24). Robinson alleges after the medical examination, he was returned to his cell, which was still contaminated with chemical agents (*id.* at 9, 24). He alleges there were puddles of chemical agents on the bedding, floor, walls, sink, and toilet (*id.*). Robinson alleges he suffered vision problems and permanent black spots on his right arm and back due to his exposure to the chemical agents (*id.* at 9). He alleges he also suffered lasting psychological injury, including mental aguish, anxiety, depression, mental and emotional distress, and nightmares (*id.* at 9, 24–25).

Robinson alleges that after the use of force, he was charged with a disciplinary infraction (tampering with a safety device), DR Log #119-111600 (ECF No. 34 at 10, 24). He alleges he was found guilty of the infraction and sentenced to sixty days in confinement and the loss of all privileges, including "audio and video privileges" (*id.* at 10, 26). He alleges the disciplinary decision was later overturned on the ground that Lieutenant Gielow improperly served on the

---

[3] Close Management is the confinement of an inmate apart from the general population, for reasons of security or the order and effective management of the institution, where the inmate, through his behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others. *See* Fla. Admin. Code r. 33-601-800(1)(d). There are three individual levels associated with Close Management, CMI, CMII, and CMIII, with CMI being the most restrictive single cell housing level. Fla. Admin. Code r. 33-601-800(1)(e).

Case No.: 3:14cv223/LAC/EMT

disciplinary team when he witnessed the incident and approved the disciplinary charge (*id.* at 16–22, 26).

Robinson claims that Defendants violated the Eighth Amendment by failing to provide him access to mental health treatment when he declared psychological emergencies, and by using excessive force on him (ECF No. at 11–12). He seeks nominal and punitive damages against all Defendants (*id.* at 11).

Defendants request dismissal of this action because Robinson failed to properly exhaust his administrative remedies, which is a precondition to this lawsuit, pursuant to 42 U.S.C. § 1997e(a) (ECF No. 55). As explained below, the court concludes that Robinson exhausted his available administrative remedies with respect to his Eighth Amendment claims. Therefore, Defendants' motion to dismiss should be denied.

## II. EXHAUSTION

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'[W]hen a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.'" Bryant v. Rich, 530 F.3d 1368, 1372–73 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005)). The PLRA requires "proper exhaustion" that complies with the "critical procedural rules" governing the grievance process. Woodford v. Ngo, 548 U.S. 81, 95, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,'—rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting Woodford, 548 U.S. at 88). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d

1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322–23 (11th Cir. 2007)). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Id.*

"[A] defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Turner, 541 F.3d at 1082. "As a result, deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." *Id.* "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*

Second, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* (citing Jones, 549 U.S. 199); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007)). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083.

In Florida, generally, a prisoner must: (1) file an informal grievance with a designated prison staff member on Form DC6-236; (2) file a formal grievance with the institution's warden on Form DC1-303; and then (3) submit an appeal to the Central Office of the Secretary on Form DC1-303. *See* Chandler v. Crosby, 379 F.3d 1278, 1288 (11th Cir. 2004) (citing Fla. Admin. Code rr. 33–103.005–103.007).[4]

Informal grievances must be received by the reviewing staff member "within a reasonable time" of when the incident or action being grieved occurred. *See* Fla. Admin. Code r. 33-103.011(1)(a). The reviewing staff member must provide the inmate with a written response to the

---

[4] The court cites provisions of the Florida Administrative Code in effect during the time period relevant to the exhaustion issue in this case.

informal grievance within 10 days. *See id.*, 33-103.011(3)(a); *see also* 33-103.005(4)(a). Unless the inmate has agreed in writing to an extension of the time limit for responding to grievances and appeals, expiration of a time limit at any step in the process entitles the inmate to proceed to the next step of the grievance process. *See* Fla. Admin. Code r. 33-103.011(4).

An inmate may bypass the informal grievance step and file a direct formal grievance if the grievance is of a certain nature, for example, a grievance of disciplinary action or a medical grievance. *See* Fla. Admin. Code r. 33-103.006(3). A formal grievance must be received by the warden, assistant warden, or deputy warden no later than 15 calendar days from (1) the date of the response to the informal grievance, or (2) the date on which the incident or action being grieved occurred, if the grievance is a direct formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(b). The warden, assistant warden, or deputy warden must respond to the grievance within 20 calendar days following receipt of the grievance. *See id.*, 33-103.011(3)(b).

Grievance appeals to the Central Office must be received within 15 calendar days from the date of the response to the formal grievance. *See* Fla. Admin. Code r. 33-103.011(1)(c). The Central Office must respond to the grievance appeal within 30 calendar days form the date of receipt of the grievance. *See id.*, r. 33-103.011(3)(c).

A grievance (i.e., an informal grievance, formal grievance, or grievance appeal) may be returned to the inmate without further processing if, following a review of the grievance, the grievance addresses more than one issue or complaint, or if the inmate raises allegations and charges in the appeal that have not been raised below at the previous level. *See* Fla. Admin. Code rr. 33-103.014(1)(a), (p); 33-103.007(2)(f). *See* Fla. Admin. Code rr. 33-103.014(1)(p). An inmate who has a grievance returned to him for either of these reasons may correct the deficiency and refile if the refiling is within the allowable time frames. *See id.*, r. 33-103.014(2). When a grievance is returned to an inmate for being improperly filed, the inmate shall be told why the grievance was returned and told that in order to receive administrative review of his complaint he must correct the defects and resubmit the grievance within the time frames set forth in Rule 33-103.011, unless instructed otherwise in the grievance response. *See id.*

III. ANALYSIS

Case No.: 3:14cv223/LAC/EMT

Defendants assert that although Robinson grieved the July 12–13, 2011 incident in formal grievance #1108-119-196 and Central Office appeal #11-6-27516, Robinson focused on the alleged procedural problems associated with the DR, not the alleged use of excessive force or the alleged deliberate indifference to his mental health needs (ECF No. 55 at 4–5; ECF No. 55-2 at 21–24; ECF No. 66-1). Defendants assert the Central Office addressed the alleged procedural deficiencies with the DR, and overturned it (ECF No. 55 at 4–5). Defendants contend that according to the grievance rules in place at that time, Robinson could grieve only one issue in each grievance, and the issue of whether excessive force was used, or whether officers were deliberately indifferent to Robinson's mental health needs, were separate issues about which Robinson should have filed separate grievances (ECF No. 55 at 4–5). Defendants assert Robinson did not file any informal or formal grievances from June to August of 2011 concerning a use of force or deliberate indifference stemming from the July 13, 2011 incident (ECF No. 55 at 4–5). To support this assertion, they submitted copies of all informal and formal grievances filed by Robinson during that time period; ECF No. 55-2). Defendants also argue that Central Office appeal #11-6-27516 was the only appeal Robinson filed concerning the July 13, 2011 incident (ECF No. 55 at 4–5). Defendants submitted copies of all Central Office appeals filed by Robinson from June through December of 2011 (ECF Nos. 55-1, 66-1). Defendants contend Robinson failed to properly exhaust the administrative remedies that were available to him, and thus failed to comply with the exhaustion requirement of 42 U.S.C. § 1997e(a) (ECF No. 55).

Robinson asserts that in July of 2011, he filed informal grievances against Defendants Gielow, Barfield, and Grant (ECF No. 67 at 3–4).[5] He alleges he did not receive responses within 10 days; therefore, he proceeded to the next step by filing formal grievance #1108-119-196, and appealing the denial of that grievance to the Central Office in appeal #11-6-27516 (*id.* at 4). Robinson asserts he addressed the issues of Defendants' use of excessive force by stating that they used chemical agents without warning or justification, and that there was no evidence to justify the use of chemical agents (*id.*). Robinson submitted a declaration of Inmate Jacquann Harvard, Inmate

---

[5] Robinson alleges he referred to Defendant Grant as "Sergeant John Doe" in the grievance, because he did not know Grant's identity at that time (*see* ECF No. 67 at 4).

#L66795, which was signed under penalty of perjury, stating that he observed Robinson place three informal grievances, against Lieutenant Gielow, Sergeant Grant, and Officer Barfield, concerning their failure to respond to Robinson's mental health emergency and spraying him with chemical agents, into the "grievance box" (ECF No. 73, Ex. C, Declaration of Jacquann Harvard ¶ 11).

The court accepts as true Robinson's assertion that in July of 2011, he filed informal grievances against Lieutenant Gielow, Sergeant Grant, and Officer Barfield concerning their failure to respond to his mental health emergencies and spraying him with chemical agents. The court also accepts as true his assertion that he did not receive a response to any of those grievances and thus proceeded to the next step of the grievance process by filing formal grievance #1108-119-196, and Central Office appeal #11-6-27516.

The undisputed evidence shows that in formal grievance #1108-119-196, Robinson did not mention the use of chemical agents or the failure to respond to his mental health emergencies (*see* ECF No. 55-2 at 22). The undisputed evidence further shows that in Central Office appeal #11-6-27516, Robinson alleged multiple procedural violations that occurred during the processing of DR #119-111600, and he also included the following allegations:

    1.    Officer Barfield "violated due process of rules and policy of (DOC) by using chemical agents, and falsifying reports . . . ."

    2.    There was no physical evidence to justify the use of chemical agents.

    3.    In Robinson's witness statement presented at the DR hearing, he stated: (a) he was a "Psych-III inmate," (b) he had declared a psychological emergency to "John Doe" (who Robinson now identifies as Defendant Grant) but the officer refused, (c) he "made several attempts," and (d) the officer "became belligerent" and sprayed chemical agents through the food flap of his cell door after Robinson threatened to break the sprinkler in his cell but never made any actual attempt to do so.

    4.    No evidence was presented to support Officer Barfield's allegations in the DR's statement of facts, or to explain why chemical agents were used.

    5.    FDOC policy provides that if an inmate declares a psychological emergency, no disciplinary action shall be initiated until the inmate's mental health care provider has been contacted to determine if the inmate is responsible for his actions.

> 6. Robinson was a "Psych 3" out-patient taking pyschotropic medication at the time of the incident giving rise to the DR.
>
> 7. Officer Barfield failed to include in the DR's statement of facts that Robinson had declared a psychological emergency, and the disciplinary team failed to include this fact in the written disciplinary decision.

(ECF No. 66-1 at 2, 5–6, 8–9, 11, 13, 15, 17). Robinson requested that the Central Office re-investigate the DR or expunge it from his record, restore his privileges, and penalize the institution, warden, disciplinary team members, and charging officer for falsifying reports, utilizing chemical agents, and failing to respond to his psychological emergency (*id.* at 19–20).

It is undisputed that the Central Office's response stated:

> Your request for administrative review has been received and evaluated. The disciplinary report you received on 07/13/11 for violation 9-34, Tampering with Safety Device, has been overturned. Our decision to overturn the disciplinary report was based on technical errors made in the processing of same. The institution has been advised of this decision and any necessary adjustments will be made to your inmate file.
>
> Based on the above information, your appeal to this office is approved.

(ECF No. 66-1 at 1).

Defendants contend that in Central Office appeal #11-6-27516, Robinson could only have exhausted his allegations of procedural deficiencies in the DR process, and not any allegations of excessive force or deliberate indifferent to his mental health needs, because FDOC procedural rules required him to present only one issue per grievance. However, the Eleventh Circuit recently held that a district court may not find a lack of exhaustion by enforcing procedural bars that prison officials declined to enforce. *See* Whatley v. Warden, Ware State Prison, — F.3d —, 2015 WL 5568465, at *6 (11th Cir. Sept. 23, 2015). The Central Office did not enforce the "single-issue" rule in this case, nor did it enforce the rule requiring the inmate to raise only those allegations that had been raised below at the previous level(s) of the grievance process. Therefore, this court may not find a lack of exhaustion by enforcing either of those procedural bars.

Robinson presented allegations of unjustified use of force and deprivation of mental health care in his grievance appeal to the Central Office. The Central Office responded to the merits of the grievance appeal without enforcing any administrative procedural bars. Therefore, the undersigned

Case No.: 3:14cv223/LAC/EMT

concludes that Defendants failed to carry their burden of establishing that Robinson failed to exhaust his available administrative remedies with respect to his claims of excessive force and denial of mental health care. Accordingly, Defendants' motion to dismiss should be denied.

Based upon the foregoing, it is respectfully **RECOMMENDED**:

That Defendants' motion to dismiss (ECF No. 55) be **DENIED**.

At Pensacola, Florida, this 13th day of October 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**